Eric M. Poulin
CA State Bar No. 298476
Roy T. Willey, IV (*pro hac vice* forthcoming)
Blake G. Abbott (*pro hac vice* forthcoming)
ANASTOPOULO LAW FIRM, LLC
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Fax: (843) 494-5535
Email: eric@akimlawfirm.com
        roy@akimlawfirm.com
        blake@akimlawfirm.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA DICKERSON, RYAN DICKERSON, JERL DICKERSON, and CHARITY DICKERSON, each individually and on behalf of all others similarly situated,<br><br>                                  Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER, INC., and NEUTROGENA CORP.<br><br>                                  Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** <u>**(JURY TRIAL DEMANDED)**</u> |

Plaintiffs Rebecca Dickerson, Ryan Dickerson, Jerl Dickerson, and Charity Dickerson ("Plaintiffs") by and through undersigned counsel bring this action against Defendants Johnson & Johnson Consumer, Inc. ("J&J") and Neutrogena Corp. ("Neutrogena" and/or collectively with J&J "Defendantss) on behalf of themselves and all others similarly situated, and make the following allegations based upon information, attorney investigation and belief, and upon Plaintiffs' own knowledge.

1

1

2

## **NATURE OF THE ACTION**

3

    1.     Plaintiffs bring this case as a result of Defendants' manufacture, distribution

4

and sale of sunscreen products (the "Products") that contain dangerously high levels of

5

benzene.

6

    2.     Defendants distribute, market and sell several over-the-counter sunscreen

7

products under their brand name "Neutrogena."

8

    3.     Several of Defendants' Neutrogena sunscreen products have been

9

independently tested and shown to be adulterated with benzene, a carcinogenic chemical

10

that is linked to leukemia and other cancers.

11

    4.     The presence of benzene in the Products renders them adulterated and

12

misbranded.  As a result, the Products are illegal to sell under the federal law and therefore

13

worthless.[1]

14

    5.     Plaintiff and members of the putative class purchased adulterated sunscreen

15

from Defendants.

16

    6.     The presence of benzene in the Products was not disclosed in the products'

17

labeling, in violation of state and federal law.

18

    7.     Plaintiffs seek both injunctive and monetary relief on behalf of the proposed

19

Class including: (i) requiring full disclosure of all such substances and ingredients in

20

Defendants' marketing advertising and labeling; (ii) requiring testing of ingredients and

21

final products for such substances; and (iii) restoring monies to the members of the

22

proposed Class.

23

24

25

_____

26

[1] *See* 21 U.S.C. § 331(a); <u>*see also*</u> *Debernardis v. IQ Formulations, LLC*, 942 F.3d

27

1076, 1085 (11th Cir. 2019); <u>*see also*</u> *In re Valsartan, Losartan, & Irbesartan Prod. Liab.*

28

*Litig.*, 2021 WL 222776, at \*16 (D.N.J. Jan. 22, 2021).

**PARTIES**

8.    Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation with its headquarters and principal place of business at Grandview Road, Skillman, New Jersey 08558.  Johnson & Johnson Consumer Inc. manufacturers, markets, advertises, labels, distributes and sells the products at issue and is the parent company of Neutrogena Corporation.

9.    Defendant Neutrogena Corporation is a Delaware corporation with its headquarters at 5760 W 96th Street, Los Angeles, California 90045.  Upon information and belief, Neutrogena distributed its products, including Neutrogena sunscreen products, throughout the United States, including the adulterated sunscreen purchased by Plaintiff(s) and members of the putative class under the direction of its parent J&J.

10.    Plaintiff Rebecca Dickerson is an individual and resident and citizen of the state of South Carolina and made multiple purchases of Products and/or used the adulterated products at issue in this litigation in South Carolina.

11.    Plaintiff Ryan Dickerson is an individual and resident and citizen of the state of South Carolina and made multiple purchases of Products and/or used the adulterated products at issue in this litigation in South Carolina..

12.    Plaintiff Jerl Dickerson is an individual and resident and citizen of the state of South Carolina and made multiple purchases of Products and/or used the adulterated products at issue in this litigation in South Carolina..

13.    Plaintiff Charity Dickerson is an individual and resident and citizen of the state of South Carolina and made multiple purchases of Products and/or used the adulterated products at issue in this litigation in South Carolina..

**JURISDICTION AND VENUE**

14.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendants, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

3

15.    This Court has personal jurisdiction over Defendants Neutrogena is headquartered in California, and because Defendants conduct business in California and have sufficient minimum contacts with California.

16.    Venue is proper in this District under 28 U.S.C. § 1391(d) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

17.    Defendants manufacture, market, advertise, label, and distribute and sell a variety of Neutrogena sunscreen spray/aerosol products and lotions, including:

| 1 | Neutrogena | Lotion | Age Shield Face Sunscreen |
|---|---|---|---|
| 2 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion SPF 70 |
| 3 | Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray SPF 100 |
| 4 | Neutrogena | Lotion | Beach Defense Water Plus Sun Protection Sunscreen Broad Spectrum Lotion SPF 70 |
| 5 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 50 |
| 6 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 70 |
| 7 | Neutrogena | Lotion | Healthy Defense Daily Moisturizer with Sunscreen SPF 50 |
| 8 | Neutrogena | Lotion | Hydro Boost Water Gel Lotion Sunscreen SPF 50 |
| 9 | Neutrogena | Spray | Kids Water-Resistant Sunscreen Spray Oil-Free SPF 70 |
| 10 | Neutrogena | Lotion | Oil-Free Facial Moisturizer with Sunscreen SPF 15 |
| 11 | Neutrogena | Lotion | Pure & Free Baby Sunscreen Lotion SPF 50 |
| 12 | Neutrogena | Lotion | Sensitive Skin Sunscreen Lotion with SPF 60+ |
| 13 | Neutrogena | Lotion | Sheer Zinc Dry-Touch Face Sunscreen SPF 50 |
| 14 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 |
| 15 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45 |
| 16 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion Broad Spectrum SPF 55 |
| 17 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 30 |
| 18 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 45 |

| 19 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70 |
| 20 | Neutrogena | Spray | Ultra Sheer Face Mist Suncreen SPF 55 |
| 21 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen Spray SPF 55 |
| 22 | Neutrogena | Lotion | Ultra Sheer Liquid Sunscreen Lotion, Broad Spectrum SPF 70 |
| 23 | Neutrogena | Lotion | Ultra Sheer Sunscreen Lotion SPF 100+ |
| 24 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ |
| 25 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 |
| 26 | Neutrogena | Spray | Wet Skin Swim Humidity Sweat Sunscreen Broad Spectrum SPF 30 |

18.    Sunscreen products are classified as a drug by the FDA because the product prevents sunburn, skin aging, and skin cancer.  Accordingly, the product is subject to safety and effectiveness standards.

19.    The FDA routinely evaluates sunscreen products to ensure the sunscreen adequately protects consumers from skin cancer when used as directed.

20.    Based on the sunscreen product's representations, the presence of a carcinogen in cancer prevention product would be concerning and affect a substantial portion of the population.

21.    On May 25, 2021, Valisure, an online pharmacy registered with the FDA, detected high levels of benzene in several brands of sunscreen which, as discussed above, are considered drug products by the FDA.[2]

22.    Valisure tested Defendants' Products listed below using a gas chromatography flame ionization tested modified to follow FDA guidance for impurity detection.[3]

---

[2] Valisure, Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care products, May 24, 2021, https://www.valisure.com/blog/valisure-news/valisure- detects-benzene-in-sunscreen/, at 1.
[3] *Id.* at 1,7.

23.    On May 25, 2021, Valisure filed a citizen petition with the FDA asking the agency to recall all batches of Defendants' products that contained 0.1 ppm or more of benzene.

24.    Moreover, Valisure found that the following Products contained quantities of benzene in excess of the "FDA concentration limit of 2 parts per million (ppm)":[4]

- Neutrogena Ultra Sheer Weightless Sunscreen Spray, SPF 100+
- Neutrogena Ultra Sheer Weightless Sunscreen Spray, SPF 70
- Neutrogena Beach Defense Oil-Free Body Sunscreen Spray-SPF 100
- Neutrogena Invisible Daily Defense Body Screen Broad Spectrum SPF 60+
- Neutrogena Beach Defense Spray Body Sunscreen SPF 50

25.    Overall, Defendants' Products contained the highest levels of benzene detected in Valisure's test.

26.    Benzene is a component of crude oil, gasoline, plastics, resins, nylon, dyes, detergents, cigarette smoke and pesticides.  The Department of Health and Human Services has determined that benzene causes cancer in humans.  The FDA lists benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients and drug products because [its] unacceptable toxicity."  Benzene is associated with blood cancers such as leukemia.[5]

27.    A 1939 study on benzene stated "exposure over a long period of time to any concentration of benzene greater than zero is not safe."[6]  The study was reiterated in a

---

[4] *Id.* at 12.

[5] National Cancer Institute, Cancer-Causing Substances, Benzene. https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/benzene.

[6] Hunter, F.T. (1939). Chronic Exposure to Benzene (Benzol). II. The Clinical Effects. *Journal of Industrial Hygiene and Toxicology*. 1939 Vol.21 pp.331-54 (https://www.cabdirect.org/cabdirect/abstract/19402700388)

2010 study stating "[t]here is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive faction."[7]

28.     Moreover, "[d]irect exposure of the eyes, skin or lungs to benzene can cause tissue injury and irritation."[8]

29.     According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, skin absorption, ingestion, akin and/or eye contact."[9]

30.     Per the FDA regulations governing the Products, titled "Sunscreen Drug Products for Over-the-Counter Human Use,"[10] there are certain acceptable active ingredients in products that are labeled as sunscreen.[11]

31.     Benzene, a known human carcinogen is not on the FDA's list of acceptable active or inactive ingredients for sunscreen products.  Nor is benzene identified as an active or inactive ingredient on any of the Sunscreen Products.

32.     Due to the presence of phenyl groups (similar chemical structure to benzene) in the molecules of some sunscreen active ingredients (avobenzone, oxybenzone, octisalate, octinoxate, homosalate, and octocylene) forming benzene from degradation by the aforementioned GC-MS analytical method through analysis of pure reference standards at concentrations relevant to typical sunscreen products.  No substantive benzene was detected.[12]

---

[7] Smith, Martyn T. (2010). Advances in Understanding Benzene Health Effects and Susceptibility. *Annual Review of Public Health*. 2010 Vol. 31:133-148 (https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.1036 46)
[8] American Cancer Society. Benzene and Cancer Risk (January 5, 2016) (https://www.cancer.org/cancer/cancer-causes/benzene.html)
[9] Centers for Disease Control and Prevention, Facts About Benzene, https://emergency.cdc.gov/agent/benzene/basics/facts.asp.
[10] 21 CFR § 352.10
[11] https://www.fda.gov.drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.
[12] *Id.* at 7-8.

33.     Thus, the presence of benzene in Defendants' Products appears to be the result of contamination (i.e., a manufacturing defect), rather than a design defect.[13]

34.     According to Valisure, because the presence of benzene is the result of contamination, benzene is not unavoidable in the manufacture of sunscreens, and therefore, any significant detection of benzene in such products should be deemed unacceptable."[14]

35.     Valisure further stated that "[s]unscreen products are typically used in many times higher volume than standard drug products like tablets or capsules, so even a relatively low concentration limit can result in very high total [benzene] exposure."[15]  Dr. Christopher Nunick, MD, PhD and Associate Professor of Dermatology at Yale University agreed, stating:

> Considering that human skin has a large total surface area (~1.85m2). And that ~28.5g of sunscreen are needed per application to properly cover that skin surface, it follows then that there is not a safe level of benzene that can exist in sunscreen products.  The total mass of sunscreen required to cover and protect the human body, in single daily application or repeated applications daily, means that even benzene 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene.[16]

36.     Defendants knew or should have known about the carcinogenic potential of benzene because it is classified as a Group 1 compound by the World Health Organization and the International Agency for Research on Cancer, thereby defining it as "carcinogenic to humans."[17]

---

[13] *Id.*
[14] *Id.* at 2.
[15] *Id.* at 16.
[16] *Id.* at 17
[17] *Id.* at 1.

1    37.    The manufacture of any misbranded or adulterated drug is prohibited under

2    federal law[18] and California state law.[19]

3    38.    The introduction into commerce of any misbranded or adulterated drug is

4    similarly prohibited.[20]

5    39.    The receipt in interstate commerce of any adulterated or misbranded drug is

6    also unlawful.[21]

7    40.    Among the ways a drug may be adulterated are: "If it consists in whole or in

8    part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been

9    rendered injurious to health."[22]

10    41.    A drug is misbranded: (a) "If its labeling is false or misleading in any

11    particular;"[23] (b) If the labeling does not contain, among other things, "the proportion of

12    each active ingredient;"[24] (c) "If it is dangerous to health when used in the dosage or

13

14

15

---

16    [18] 21 U.S.C. §331(g)

      [19] *See* Cal. Health & Safety Code § 111250 ("It is unlawful for any person to
17    manufacture, sell, deliver, hold, or offer for sale any drug or device that is adulterated." );
      Cal. Health & Safety Code § 111330 ("Any drug or device is misbranded if its labeling is
18    false or misleading in any particular.")

19    [20] 21 U.S.C. §331(a); Cal. Health & Safety Code § 111305 ("It is unlawful for any person
      to receive in commerce any drug or device that is adulterated or to deliver or proffer for
20    delivery any drug or device.")

21    [21] 21 U.S.C. §331(c); Cal. Health & Safety Code § 111305.

      [22] 21. U.S.C. 351(a)(2)(B). *See* Cal. Health & Safety Code § 111250 ("Any drug or device
22    is adulterated if it consists, in whole or in part, of any filthy, putrid, or decomposed
      substance."; Cal. Health & Safety Code § 111255 ("Any drug or device is adulterated if it
23    has been produced, prepared, packed, or held under conditions whereby it may have been
      contaminated with filth, or whereby it may have been rendered injurious to health.")
24
      [23] 21 U.S.C. §352(a)(1).  California law similarly states: "Any drug or device is
25    misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety
      Code § 111330.  *See also* Cal. Health & Safety Code § 111285 ("Any drug or device is
26    adulterated if its . . . purity of quality is below, that which it is represented to possess.")
27    [24] 21 U.S.C. §352(e)(1)(A)(ii); *see* Cal. Health & Safety Code § 111355(a): "Any drag is
28    misbranded unless its label bears . . . all of the following information: . . . (3) For non

manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[25]

42.    If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[26]

43.    Defendants' failure to control for benzene contamination and continued sale of its adulterated products constitutes actionable fraud.

44.    Plaintiffs and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain harmful levels of benzene, and Defendants has failed to warn consumers of this fact for fifty days.  Such illegally sold products are worthless and have no value.[27]

45.    Plaintiffs and the members of the putative class bargained for a sunscreen product free of contaminants and dangerous substances, and were deprived the basis of

---

prescription drugs, the quantity or portion of each active ingredient and the establsiehd name of each inactive ingredient in accordance with Sections 502(e)(1)(A)(ii) and (iii))."

[25] 21 U.S.C. § 352(j); *see* Cal. Health & Safety Code § 111400 ("Any drug or device is misbranded if it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in its labeling.").

[26] "The labeling of a drug may be misleading by reason (among other reasons) of: . . . (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. § 201.10(2). *See* Cal. Health & Safety Code § 111355(b) ("Any drug is misbranded unless its label bears . . . all of the following information: The requirement for stating the quantity of the active ingredients of any drug . . .").

[27] *See Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); *see also In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.,* 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for.").

their bargain when Defendants sold them a sunscreen product containing the dangerous substance benzene, which rendered the Products unmerchantable and unfit for use.

46.    As the Products expose consumers to benzene well above the legal limit, the Products are not fit for use by humans.  Plaintiffs are further entitled to damages for the injury sustained in being exposed to high levels of acutely-toxic benzene, a carcinogenic and toxic chemical impurity.

47.    Plaintiffs and the members of the putative class are entitled to equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) breach of implied warranty; (iii) California's Unfair Trade Practices Act; (iv) fraudulent concealment; and (v) unjust enrichment.

## CLASS ACTION ALLEGATIONS

48.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

49.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

**The National Class:**

All consumers who purchased and/or used the Products for personal use and consumption.

**South Carolina Sub-Class:**

All consumers who purchased and/or used the Products in the State of South Carolina for personal use and consumption.

50.    Excluded from the Class is J&J and Neutrogena and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and the Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

51.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

53.     The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiffs are informed and believe that there are thousands of members of the Class, the precise number being unknown to Plaintiffs, but such number being ascertainable from the Defendants' records.  Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

54.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

(a) whether the Products manufactured by Defendants contain dangerously high levels of benzene, thereby breaching the express and implied warranties made by Defendants and making the Products unfit for human use and therefore unfit for its intended purpose;

(b) whether Defendants knew or should have known that Products contained elevated levels of benzene prior to selling it, thereby constituting fraud and/or fraudulent concealment;

(c) whether Defendants are liable to Plaintiffs and the Class for unjust enrichment;

(d) whether Defendants are liable to Plaintiffs and the Class for fraudulent concealment;

(e) whether Plaintiffs and the Class have sustained monetary loss and the proper measure of that loss;

(f) whether Plaintiffs and the Class are entitled to declaratory and injunctive relief;

(g) whether Plaintiffs and the Class are entitled to restitution and disgorgement from Defendants; and

(h) whether the marketing advertising packaging, labeling, and other promotional materials for the Products are deceptive

**Typicality: Fed. R. Civ. P. 23(a)(3)**

55.    Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy: Fed R. Civ. P. 23(a)(4)**

56.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of other members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex litigation and Plaintiffs intend to prosecute the action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

57.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and other members of the Class are relativity small compared to the burden and expense that would be required to individually litigate their claims against the Defendants, so it would be impracticable for members of the Class to individually seek redress for the Defendants' wrongful conduct.

58.    Even if members of the Class counsel afford individual litigation, the court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court

system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

59.    To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

### Declaration and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

60.    Defendants has acted or refused to act on grounds generally applicable to Plaintiffs and members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### Breach of Express Warranty
### (Plaintiffs and Other Members of the Class)

61.    Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

62.    Plaintiffs brings this claim on behalf of themselves and on behalf of members of the proposed Class.

63.    In connection with the sale of the Products, Defendants, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Products were sunscreens that contained only those active and inactive ingredients listed on the Products' labels.  Those active and inactive ingredients do not include benzene, a known human carcinogen dangerous to humans.  Defendants further expressly warrants that the Products are sunscreens used for sun protection, rather than adulterated sunscreens containing dangerous chemicals.

64.    As a direct and proximate cause of Defendants' breach of express warranty, Plaintiffs and the Class members have been injured and harmed because they would not

have purchased the Products on the same terms if they knew that the Products contained benzene and are not generally recognized as safe.

65.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**Breach of Implied Warranty**
**(Plaintiffs and Other Members of the Class)**

66.   Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

67.   Plaintiffs bring this claim on behalf of themselves and on behalf of the member of the proposed Class against Defendants.

68.   Defendants, as the designer, manufacturer, marketer, distributor and/or seller, impliedly warranted that the Products (i) would not contain elevated levels of benzene and (ii) are generally recognized as safe for human use.

69.   Defendants breached the warranty implied in the contract for the sale of the defective Products because they could not pass without objection in the trade under the contract description, the Products were not of fair or average quality within the description and the Products were unfit for their intended and ordinary purpose because the Products manufactured distributed, and sold by Defendants were defective in that they contained elevated levels of carcinogenic and toxic benzene, and as such are not generally recognized as safe for human use.  As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendants to be merchantable.

70.   Plaintiffs and the members of the Class purchased the Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

71.   The Products were not altered by Plaintiffs or members of the Class.

72.    The Products were defective when they left the exclusive control of Defendants.

73.    Defendants knew that the Products would be purchased and used without additional testing by Plaintiffs and members of the Class.

74.    The Products were defectively manufactured and unfit for their intended purpose, and Plaintiffs and members of the Class did not receive the goods as warranted.

75.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and members of the Class have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained harmful levels of benzene, and are not generally recognized as safe for human use; and (b) the Products do not have the characteristics ingredients, uses or benefits as promised by Defendants.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
### Fraudulent Concealment
### <u>(Plaintiffs and Other Members of the Class)</u>

76.    Plaintiffs incorporate by reference all allegations contained in all preceding paragraphs of this complaint.

77.    Defendants had a duty to disclose material facts to Plaintiffs and the Class given their relationship as contracting parties and intended users of the Products. Defendants also had a duty to disclose material facts to Plaintiffs and the Class, namely that it was in fact manufacturing, distributing and selling harmful products unfit for human use, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

78.    Defendants possessed knowledge of these material facts.  Since at least mid-2020, numerous recalls put Defendants on notice that adulterated and misbranded products were being investigated for contamination with carcinogens, including benzene.  Further, benzene is avoidable in the manufacture of sunscreens.

79.    During this time, Plaintiffs and members of the Class were using the Products without knowing they contained dangerous levels of benzene.

80.    Defendants failed to discharge its duty to disclose these material facts.

81.    In so failing to disclose these materials facts to Plaintiffs and the Class, Defendants intended to hide from Plaintiffs and the Class that they were purchasing and consuming the Products with harmful defects that were unfit for human use, and thus acted with scienter and/or an intent to defraud.

82.    Plaintiffs and the Class reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the defective Products manufactured sold by Defendants had they known they contained unsafe levels of benzene.

83.    As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiffs and the Class suffered damages in monies paid for the defective Products.

84.    As a result of Defendants' conduct, punitive damages are warranted.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### Unjust Enrichment
### (Plaintiffs and Other Members of the Class)

85.    Plaintiffs incorporates by reference the all allegations contained in all proceeding paragraphs of this complaint.

86.    Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the proposed Class.

87.    Plaintiffs and the Class conferred a benefit on Defendants in the form of monies paid to purchase Defendants' defective and worthless Products.

88.    Defendants voluntarily accepted and retained this benefit.

89.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of the Class, that the Court enter a judgment in their favor and against Defendants as follows:

17

(a)   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Class and Plaintiffs' attorneys as Class Counsel;

(b)   For an order declaring the Defendants' conduct violated the causes of action referenced herein;

(c)   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)   For prejudgment interest on all amounts awarded;

(f)   For an order of restitution and all other forms of equitable monetary relief;

(g)   For injunctive relief as pleaded or as the Court may deem proper; and

(h)   For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: September 9, 2021                     Respectfully submitted,

**ANASTOPOULO LAW FIRM, LLC**

By:     /s/ *Eric M. Poulin*
        Eric M. Poulin
        CA State Bar No. 298476
        32 Ann Street
        Charleston, SC 29403
        Tel: (843) 614-8888
        Fax: (843) 494-5535
        Email: eric@akimlawfirm.com

**Attorneys for the Plaintiffs**